IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALEXANDER BRUNO, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Civil No. 3:24-cv-00005-SLH |
| ROUNDHOUSE CYCLES INC., d/b/a ROUNDHOUSE HARLEY DAVIDSON, | ) Judge Stephanie L. Haines ) ) ) |
| Defendant. | ) ) |

**OPINION**

Plaintiff Alexander Bruno ("Bruno") commenced this action on January 3, 2024, filing a two count Complaint, ECF No. 1, alleging that Defendant Roundhouse Cycles, Inc. ("Roundhouse") violated both the Magnuson Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq.* and the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-2(4)(vii), (xiv), and (xvii). On February 1, 2024, Roundhouse filed a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6), ECF No. 8, alongside an accompanying Brief in Support. ECF No. 9. In addition to asserting that Bruno has failed to sufficiently plead a breach of either the implied warranty of merchantability or an express warranty in support of his MMWA claim, Roundhouse asserts that Bruno failed to plead fraud and that his claim under the UTPCPL should be dismissed under the gist of the action doctrine. On March 4, 2024, Bruno filed a Brief in Opposition to the Motion to Dismiss, ECF No. 11, to which Roundhouse filed a Reply on March 11, 2024. ECF No. 12. The matter is fully briefed and ripe for disposition.

For the reasons set forth below, Defendant's motion to dismiss will be granted in part and denied in part.

1

I.  **Factual Background**[1]

On April 15, 2023, Bruno purchased a Harley-Davidson FLTRXST motorcycle ("motorcycle") from Roundhouse Cycles for $51,255.11. ECF No. 1, ¶¶ 2-7. Before Bruno purchased the motorcycle, it had been extensively modified—and retained such modifications at the time it was purchased by Bruno. *Id.* at ¶ 8. As part of the transaction in which Bruno purchased the motorcycle, Roundhouse also sold him a 24-month Mechanics' Choice Warranty Company service contract ("service contract") endorsing the motorcycle. *Id.* at ¶ 9.

Shortly after purchase, Bruno alleges that the motorcycle's engine failed while he was driving it—he heard a loud pop, pulled off onto an exit, and shut the motor down. ECF No. 1, ¶ 10; ECF No. 1-4, p. 2. The engine's failure occurred with 696 miles on the odometer—681 miles more than at purchase—and was a result of an incorrect engine programming file being installed in the motorcycle prior to its purchase by Bruno. ECF No. 1, ¶ 10. Roundhouse refused to repair the damage, and Bruno incurred $12,052.22 in expenses to repair the damage caused by the installation of the incorrect programming. *Id.* at ¶ 11-13.

II. **Legal Standard**

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed, in whole or in part, for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). In this way, a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to

---

[1] For purposes of assessing Roundhouse's Motion to Dismiss, the following facts set forth in Bruno's Complaint and attachments are accepted as true. *See Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.").

'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (internal citations omitted).

At the motion to dismiss stage, the court does not address whether the plaintiff will be able to prove the facts alleged or will ultimately prevail on the merits, but instead determines if the claimant is entitled to offer evidence to support the claims. *See Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000). As such, the court must accept as true all well-pled factual allegations in the complaint and its attachments and view all reasonable inferences in the light most favorable to the plaintiff(s). *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002); *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426 (3d Cir. 1997). However, the court is not required to accept inferences that are unsupported by factual allegations in the complaint or legal conclusions disguised as factual allegations. *See Twombly*, 550 U.S. at 555; *California Pub. Emp. Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004).

When determining the sufficiency of a complaint under the standards established in *Twombly* and *Iqbal*, a court must: (1) "tak[e] note of the elements a plaintiff must plead to state a claim," *Iqbal*, 556 U.S. at 675; (2) identify allegations unsupported by facts that, "because they are no more than conclusions, are not entitled to the assumption of truth," *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011); and, (3) assume the veracity of well-pleaded factual allegations and proceed to "determine whether they plausibly give rise to

3

an entitlement to relief." *Iqbal*, 556 U.S. at 679. In short, a motion to dismiss should not be granted if a plaintiff alleges facts, which taken as true, would entitle him/her to relief. *See Iqbal*, 281 F.3d at 678; *see generally Twombly*, 550 U.S. at 570.

### III. Discussion

#### A. Magnuson Moss Warranty Act Claim (Count One)

"Magnuson-Moss is a remedial statute designed to protect purchasers of consumer goods from deceptive warranty practices." *Dzielak v. Whirlpool Corp.*, 26 F.Supp.3d 304, (D.N.J. 2014) (quoting *Miller v. Willow Creek Homes, Inc.*, 249 F.3d 629, 630 (7th Cir. 2001) (internal quotation marks omitted). Under the MMWA, "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief. . . [and] may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended). . . ." 15 U.S.C. § 2310(d)(1)-(2).

However, the MMWA also provides that:

> No action (other than a class action . . . ) may be brought . . . for failure to comply with any obligation under any written or implied warranty or service contract . . . unless the person obligated under the warranty or service contract is afforded a reasonable opportunity to cure such failure to comply.

15 U.S.C. § 2310(e).

In this way, the MMWA prohibits an individual consumer from bringing an action under the MMWA prior to affording the seller an opportunity to cure. *See In re Shop-Vac*, 964 F.Supp.2d at 362 ("While Section 2310(e) requires that sellers be afforded an opportunity to cure before an individual consumer may bring an action under the MMWA, classes of consumers are prohibited only from proceeding in a class action unless the seller is afforded a reasonable opportunity to cure

4

the defect."); *DeFrank v. Samsung Electronics America, Inc.*, No. 19-21401. (KM)(JBC), 2020 WL 6269277, at *20 (D.N.J. Oct. 26, 2020) (denying a motion to dismiss a MMWA claim as a result of the plaintiffs adequately pleading that they had given the seller a reasonable opportunity to cure); *In re: Elk Cross Timbers Decking Marketing*, No. 15-18 (JLL), 2015 WL 6467730, at *34 (D.N.J. Oct. 26, 2015) (dismissing the plaintiffs' MMWA claim for failure to plead whether defendant was provided an opportunity to cure the alleged defect because the "MMWA provides that no legal action can be brought under its private right of action until the warrantor is given the opportunity to cure the violation.").

### 1. Breach of Express Warranty

Bruno alleges that the vehicle service contract Roundhouse sold him when he purchased his motorcycle constitutes an express warranty "that the vehicle was covered by the terms of the service contract." ECF No. 1, ¶ 33; ECF No. 11, p. 6. Though not explicitly stated, Bruno's Amended Complaint implicitly sets forth that this claim relies on two theories arising from the alleged breach of warranty. First, Bruno implicitly contends that Roundhouse breached this express warranty when it refused to "repair the damage caused to the motorcycle by. . . [the] installation of the incorrect programming file." ECF No. 1, ¶ 11. Second, Bruno explicitly contends that Roundhouse breached this express warranty by selling him a service contract that does not provide coverage for modified vehicles. ECF No. 1, ¶¶ 12, 31, 34. In this way, Bruno argues that "[t]he service contract sold by [Roundhouse] was worthless." ECF No. 1, ¶ 12. Though Bruno's breach of express warranty claim implicates two theories, those theories are intertwined such that they both amount to an allegation that Roundhouse expressly represented, in a signed writing, that the motorcycle was covered under the service contract, and Roundhouse failed to

5

repair the motorcycle's defect. Thus, these two nuances of the same breach of express warranty claim will be evaluated coextensively below.

Express warranties by the seller are created by any affirmation of fact or promise made by the seller to the buyer which relates to the goods or any description of the goods that becomes part of the basis of the bargain. *See* 13 Pa.C.S.A. § 2313(a)(1)-(2). Written "repair or replace" warranties may constitute an express warranty, the breach of which may be established if a plaintiff proves: "(1) a covered defect existed; (2) notice of the defect was given within a reasonable time after it was or should have been discovered; and (3) the warrantor was unable to repair the defect after a reasonable time or a reasonable number of attempts." *Lewis v. Ford Motor Co.*, 610 F.Supp.2d 476, 489 (W.D. Pa. 2009).

### a. Did a Covered Defect Exist?

Here, Bruno alleges that the incorrect engine programming files on the motorcycle resulted in engine failure, and that Roundhouse refused to repair the damage. ECF No. 1, ¶¶ 10-11. The systems and equipment covered by the vehicle service contract, "subject to any exclusions and/or limitations listed on the reverse side," include the engine which encompasses the: "crankshaft, cylinder heads, pistons, camshafts, cylinders and all internally lubricated parts." ECF No. 1-3, p. 2. In the repair order recommendations, the service writer at Scooters Performance noted that "[t]o properly repair the motorcycle it is required to . . . [r]eplac[e] all engine components and recondition . . . or replace. . . the crankshaft assembly." ECF No. 1-4, p. 3. As such, Bruno has alleged facts sufficient to plead that a defect existed which was warranted as covered under the vehicle service contract, subject to certain exclusions and/or limitations.

### b. Was Notice of the Defect Given Within a Reasonable Time After It Was or Should Have Been Discovered?

What constitutes a "reasonable time" is not set forth under the MMWA; instead, a reasonable time, is usually "a question of fact which will vary under different conditions, so much so that no fixed rule can be laid down." *David's Bridal, Inc. v. Cels Enterprises Inc.*, No. 13-2870, 2015 WL 13651382, at *16 (E.D. Pa. Mar. 20, 2015) (quoting *Tinius Olsen Testing Mach. Co. v. Wolf Co.*, 146 A. 541, 542 (Pa. 1929)) (internal quotations omitted). Here, Bruno has not specifically alleged any facts as to the date the defect was discovered—the date the engine failure occurred. However, as exhibits attached to his Complaint, Bruno filed copies of invoices received for the repair of the damage incurred from the engine failure caused by the incorrect programming files installed on the motorcycle. On the first invoice, an open date indicates that Bruno took the motorcycle to Scooters Performance to address the engine issues on May 15, 2023, exactly one month after the motorcycle was purchased. ECF No. 1-4, p.1; ECF No. 1, ¶ 4. Bruno alleges in his Complaint that Roundhouse refused to repair the damage to the motorcycle caused by the installation of the incorrect programming file. ECF No. 1, ¶ 11. In order for Roundhouse to refuse to repair, Roundhouse had to have been given notice of the defect prior to Scooters Performance undertaking the repair work. Thus, Bruno has implicitly alleged that he notified Roundhouse of the defect within a month after purchase. In light of these facts, the Court determines that Bruno has set forth facts sufficient to infer that notice of the defect was given within a reasonable time, no later than one month, after the defect was discovered.

        **c.    Was the Warrantor Unable to Repair the Defect After a Reasonable Time or a Reasonable Number of Attempts?**

As noted above, Bruno has alleged that Roundhouse "refused to repair the damage caused to the motorcycle by [Roundhouse's] installation of the incorrect programming file." ECF No. 1, ¶ 11. When a plaintiff has sufficiently alleged a refusal to repair, the required pleading of the warrantor's inability to repair the defect after a reasonable time or a reasonable number of attempts

7

is satisfied. *See Cox v. Chrysler Group, LLC*, No. 14-7573 (MAS)(DEA), 2015 WL 5771400, at *7 (D.N.J. Sept. 30, 2015) (holding in a class action case that "every Plaintiff that gave Chrysler the opportunity to repair the defect but was refused service under the warranty has sufficiently alleged that the remedy failed); *Lewis*, 610 F.Supp.2d at 489 (finding that while no specific allegations regarding Ford's inability or refusal to repair the defect within a reasonable time were made, the facts alleged by the plaintiff were suggestive of the proscribed conduct, rendering dismissal under Rule 12(b)(6) inappropriate).

As such, Bruno has pled facts sufficient to satisfy the requisite showing that the warrantor was unable to repair the defect after a reasonable time or a reasonable number of attempts in addition to satisfying the MMWA's requirement that Roundhouse be given opportunity to cure the defect. Thus, Bruno has pled facts sufficient to allege that Roundhouse breached the express warranty that the motorcycle was covered under the service contract. Therefore, the Court will DENY Roundhouse's Motion to Dismiss Bruno's MMWA breach of express warranty claim.

  **2. Breach of Implied Warranty**

The MMWA defines an implied warranty as "an implied warranty arising under State law . . . in connection with the sale by a supplier of a consumer product." 15 U.S.C. § 2301(7). In this way, "the MMWA provides a federal cause of action for breach of a state law warranty claim." *Weinberg v. Legion Athletics, Inc.*, 683 F.Supp.3d 438, 450 (E.D. Pa. 2023). As such, the sufficiency of an implied warranty claim under the MMWA is determined by reference to state law. *See In re Shop-Vac Marketing and Sales Practices Litigation*, 964 F.Supp.2d 355, 362 (M.D. Pa. 2013); *Cooper v. Samsung Elecs. Am., Inc.*, 374 Fed.Appx. 250, 254 (3d Cir. 2010) (affirming dismissal of a MMWA claim because the plaintiff failed to plead a viable state claim); *Clemens v.*

*DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) ("[T]his court's disposition of the state law warranty claims determines the disposition of the Magnuson-Moss Act claims.")).

To establish a breach of the implied warranty of merchantability, a plaintiff must show: (1) the existence of the implied warranty; (2) breach of the implied warranty; and, (3) that the breach of warranty was the proximate cause of the loss sustained. *See* 13 Pa. C.S.A. § 2314 cmt. 13[2]; *see also Byrd v. Essex Silverline Corp.*, No. 04-4827, 2008 WL 81887, at *3 (E.D. Pa. 2008).

### a.  The Existence of the Implied Warranty

"In Pennsylvania, the statutorily implied warranty of merchantability applies to every sale of goods unless specifically disclaimed," *Weinberg*, 683 F.Supp.3d at 450-51 (citing 13 Pa.C.S.§ 2314; *Phillips v. Cricket Lighters*, 883 A.2d 439, 443-44 (Pa. 2005)), if the seller is a merchant with respect to goods of that kind. *See* 13 Pa.C.S.§ 2314; *Barton v. Lowe's Home Centers, Inc.*, 124 A.3d 349, 357 (Pa. Super. Ct. 2015).

Here, Bruno alleges that because Roundhouse—a Harley-Davidson dealer—is a merchant who deals in goods of the kind in question here, the implied warranty of merchantability automatically applied to the sale of the motorcycle. ECF No. 1, ¶ 16. Bruno further alleges that Roundhouse "did not disclaim the implied warranty of merchantability," and thus "sold the vehicle . . . subject to the terms of merchantability." ECF No. 1 ¶¶ 25-26.[3] As such, Bruno has alleged facts to sufficiently plead that the implied warranty of merchantability applied to the transaction.

---

[2] Pennsylvania rules of statutory construction allow consultation of the Comments in the application of a statute. *See Phillips v. Cricket Lighters*, 883 A.2d 439, 444, n. 4 (Pa. 2005); 1 Pa.C.S.A. §1939 ("The comments or report of the commission, committee, association or other entity which drafted a statute may be consulted in the construction or application of the original provisions of the statute if such comments or report were published or otherwise generally available prior to the consideration of the statute by the General Assembly, but the text of the statute shall control in the event of conflict between its text and such comments or report.").

[3] Roundhouse does not contend in response that the implied warranty of merchantability was disclaimed but rather that Bruno failed to plead a prima facie case that it was breached.

### b. Breach of the Implied Warranty of Merchantability

To sufficiently allege breach of the implied warranty of merchantability, the product purchased must be unfit for its ordinary purpose. *See* 13 Pa. C.S.A. § 2314(b)(3); *Weinberg*, 683 F.Supp.3d at 451. In articulating this measurement, the Pennsylvania Supreme Court has noted that, "[t]he concept of merchantability does not require that the goods be the best quality, or the best obtainable, but it does require that they have an inherent soundness which makes them suitable for the purpose for which they are designed, that they may be free from significant defects, that they perform in the way that goods of that kind should perform, and that they be of reasonable quality within expected variations and for the ordinary purpose for which they are used." *Gall by Gall v. Allegheny County Health Dep't*, 555 A.2d 786, 789-90 (Pa. 1989) (internal citations and quotation marks omitted); *see also Phillips*, 883 A.2d at 444. In other words, what is required "is not evidence that the defects should or could have been uncovered by the seller but only that the goods upon delivery were not of a merchantable quality or fit for their particular purpose." *Vlases v. Montgomery Ward & Co.*, 377 F.2d 846, 850 (3d Cir. 1967). Relevant here, the Pennsylvania Supreme Court has noted in other contexts that the ordinary purpose of a motor vehicle is, generally, transportation. *See Commonwealth v. Smith*, 186 A.3d 397, 403 (Pa. 2018).

While "[o]ne way to demonstrate a defect is by the submission of circumstantial evidence . . . [a] product's defectiveness can also be proven by pointing to some specific dereliction by the manufacturer in constructing or designing the product." *Mains v. Sherwin-Williams Company*, 640 F.Supp.3d 373, 388-89 (E.D. Pa. 2022) (internal citations omitted).

Here, Bruno specifically alleges that Roundhouse "installed the incorrect engine programming file on the motorcycle prior to purchase, which resulted in engine failure at 696 miles." ECF No. 1, ¶ 10. Clearly, engine failure renders any motorized vehicle unfit for use in the

ordinary purpose of transportation. *See Hornberger v. GMC*, 929 F.Supp. 884, 888 (E.D. Pa. 1996) (holding that allegations of transmission failure at 40,000 miles and three years after leasing the vehicle is sufficient to state a claim for breach of implied warranty of merchantability such that a genuine issue of material fact existed, precluding summary judgment). Thus, in alleging a specific defect rendered the motorcycle unfit for the purpose of transportation, Bruno has sufficiently pled that the implied warranty of merchantability was breached.

In assessing whether conduct or an event is a proximate cause of a result, it is not enough to determine that the result would not have occurred but for the conduct or event; however, the conduct or event must be a substantial factor which brought about the result. *See Whitner v. Von Hintz*, 263 A.2d 889, 893-94 (Pa. 1970); *Gutteridge v. A.P. Green Services, Inc.*, 804 A.2d 643, 654 (Pa. Super. 2002); *Amarhanov v. Fassel*, 658 A.2d 808, 809 (Pa. Super. 1995); *see also Severa v. Solvay Specialty Polymers USA, LLC*, 524 F.Supp.3d 381, 392 (D.N.J. 2021).

Here, Bruno alleged that "the incorrect engine programming file . . . resulted in engine failure," ECF No. 1, ¶ 10, and attached as an exhibit to his Complaint, ECF No. 1-4, p.3, wherein, the company who conducted the repairs on the motorcycle noted in the repair order recommendation that "the tune file. . . caused runnability concerns and resulted in engine damage." As such, Bruno has alleged facts sufficient to plead that the incorrect engine files were a substantial factor which brought about the result and without which, the runnability concerns and engine damage would not have occurred.

Thus, Bruno has pled facts sufficient to allege that Roundhouse breached the implied warranty of merchantability. Therefore, the Court will DENY Roundhouse's Motion to Dismiss Bruno's MMWA breach of the implied warranty of merchantability claim.

B.   **Pennsylvania UTPCPL Claim (Count Two)**

"Arising out of the concern that tort recovery should not be permitted for contractual breaches[,]" *Addie v. Kjaer*, 737 F.3d 854, 865 (3d Cir. 2013), "the [gist of the action] doctrine is designed to maintain the conceptual distinction between breach of contract claims and tort claims." *eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002). At its core, the Pennsylvania gist of the action doctrine prevents "plaintiffs from recasting ordinary breach of contract claims into tort claims." *Id.*; *MDB v. Punxsutawney Christian Sch.*, 386 F. Supp. 3d 565, 591 (W.D. Pa. 2019).

In determining the gist of the action, "the mere existence of a contract between two parties does not *ipso facto*, classify a claim ... as one for breach of contract." *Bruno v. Erie Ins. Co.*, 630 Pa. 79, 114 (Pa. 2014). Instead, "the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract" is "the nature of the duty alleged to have been breached." *Id.* at 111-12. This distinction overlooks the mere labeling of a claim as one of tort or of contract and examines the substance of the allegations comprising that particular claim in order to determine whether the duty is imposed by law as a matter of social policy or by mutual consensus agreements between parties to a contract. *See Id.*; *Sullivan v. Chartwell Investment Partners, LP*, 873 A.2d 710, 718 (Pa. Super. 2005).

Since the duty-based demarcation discussed in *Bruno* is the "touchstone standard for ascertaining the true gist or gravamen of a claim pled by a plaintiff in a civil complaint[,]" a tort claim founded on the breach of the specific executory promises which comprise the underlying contract would be subsumed by a coinciding breach of contract claim. *Bruno*, 630 Pa. at 113-14. However, if a tort claim is alleged based upon actions of a contracting party not governed by contractual obligations, the claim is not viewed as an action based upon the underlying contract

12

itself because the contract was merely a mechanism which established the relationship between the parties during which a tort was committed. *See id.* at 114. This narrow distinction exists, in essence, between claims which are premised upon the terms of the contract, arising from a contractual duty, and those which are premised instead upon the defendant's conduct outside the terms of the contract, arising from a broader social duty enforced by the law. *Id.* at 112-13. In other words, the gist of the action doctrine provides that "an alleged tort claim against a party to a contract, based on the party's actions undertaken in the course of carrying out a contractual agreement, is barred when the gist or gravamen of the cause of action stated in the complaint, although sounding in tort, is, in actuality, a claim against the party for breach of its contractual obligations." *Earl v. NVR, Inc.*, 990 F.3d 310, 315 (3d Cir. 2021) (quoting *Dixon v. Northwestern Mutual*, 146 A.3d 780, 788 (Pa. Super. Ct. 2016)).

The *Bruno* Court likened the duty-based demarcation to the "inextricably intertwined" standard expressed in *eToll* and explained that such a demarcation should be viewed "as a determination of whether the nature of the duty upon which the breach of contract claims rest is the same as that which forms the basis of the tort claims." *Bruno*, 630 Pa. at n.17. In *eToll*, the court recognized that there is no categorical exception to the gist of the action doctrine for fraud and held that "the cases seem to turn on the question of whether the fraud concerned the performance of contractual duties." 811 A.2d at 19. While claims of fraudulent inducement are "much more likely to present cases in which a social policy against the fraud, external to the contractual obligations of the parties, exists," *Sullivan*, 873 A.2d at 719 (internal citations omitted), such claims may still be dismissed under the gist of the action doctrine "where the precontractual statements that are the basis for the fraudulent inducement claim concern specific duties that the

parties later outlined in the alleged contract." *Downs v. Andrews*, 639 Fed.Appx. 816, 820 (3d Cir. 2016) (citing *Wen v. Willis*, 117 F.Supp.3d. 673, 681 (E.D. Pa. 2015)).

While Pennsylvania's Supreme Court has ruled that the UTPCPL "must be liberally construed" to protect consumers in the marketplace, *Commonwealth of Pennsylvania v. Monumental Properties, Inc.*, 329 A.2d 812, 817 (Pa. 1974); *see also Sarfield v. Citimortgage, Inc.*, 707 F.Supp.2d 546, 556 (M.D. Pa. 2010), the gist of the action doctrine may still preclude a UTPCPL claim in the same manner it precludes any other claim—based upon the nature or origin of the allegedly breached duty. *See Earl*, 990 F.3d at 314-15; *Okulski v. Carvana, LLC*, No. 20-1328, 2021 WL 2223834, at *2-3 (E.D. Pa. June 2, 2021).[4]

Bruno contends that three actions provide the basis for Roundhouse's alleged violations of the UTPCPL. These include "delivering a defective vehicle, refusing to repair the damage caused by [its] improper actions and failing to deliver a vehicle that was eligible for the full coverage of the service contract." ECF No. 1, ¶ 42. Bruno does not allege or hint at any additional facts in support of this claim such as any fraudulent representations—in an advertisement or marketing campaign or otherwise—that were collateral to the contract. Nor did Bruno file an amended complaint within 21 days after service of Roundhouse's 12(b)(6) motion, Fed. R. Civ. Pro. 15(a)(1), or subsequently request leave of Court to amend after the 21 day period had passed. Instead, the same actions which give rise to Bruno's MMWA claim underlie his UTPCPL claim.

---

[4] The only variance in the analysis of gist of the action relative to the UTPCPL is the consideration that the contract must be "collateral" to the matters alleged—an equivalent examination as to whether the duty is created by or subsumed by the duty set forth in the terms of the contract. *See Knight v. Springfield Hyundai*, 81 A.3d 940, 950-51(Pa. Super. Ct. 2013) (holding that the contract was collateral to the false advertisements, statements, and assurances made by appellees prior to signing the contract); *Earl*, 990 F.3d at 315 (finding that false representations made prior to and after the contract period for the sale of the home were collateral to the underlying contract itself).

Based on the actions upon which Bruno rests his UTPCPL claim and the duties allegedly breached by said actions, it is clear that Bruno's UTPCPL claim is inextricably intertwined with the underlying transaction and contract to the extent that any duty Roundhouse allegedly breached was created by the parties, or eventually outlined by the parties through the terms of their contract rather than imposed by a broader social duty owed to all individuals. Absent the underlying transaction, Roundhouse possessed no duty to deliver to Bruno any vehicle—let alone one fit for its ordinary purpose. Absent the service contract entered into as part of the underlying transaction, Roundhouse neither possessed a duty to deliver a vehicle covered by a service contract nor to subsequently repair the vehicle under the service contract should it prove defective. In this way, the obligations which Bruno alleges were violated, precipitating the UTPCPL claim, arose solely from the underlying transaction and service contract entered into by the parties. As such, Bruno has adduced no set of facts to state a claim under the UTPCPL that is not barred by the gist of the action doctrine, and neither has he requested leave to amend. For this reason, the Court will GRANT Roundhouse's Motion to Dismiss Bruno's UTPCPL claim WITH PREJUDICE as the underlying actions that gave rise to the alleged breach of duties are barred by the gist of the action doctrine from also supporting his UTPCPL claim.[5] *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252-53 (3d Cir. 2007) (noting that in ordinary civil litigation, "a district court need not worry about amendment when the plaintiff does not properly request it.").

---

[5] As the Court finds that Bruno's UTPCPL claim is barred by the gist of the action doctrine, it need not address Roundhouse's allegation that Bruno's UTPCPL claim should be dismissed for failure to sufficiently allege fraud.

## IV. Conclusion

Because Bruno has pled facts sufficient to state a claim under the MMWA for both breach of an express warranty and breach of the implied warranty of merchantability, the Court will deny Defendant's motion to dismiss Bruno's MMWA claim asserted at Count One of the complaint.

However, because Bruno's UTPCPL claim is predicated on Defendant's alleged breach of duties that existed only as a result of the parties' contractual relationship, the underlying acts that gave rise to the alleged breach of duties are barred by the gist of the action doctrine. Thus, the Court will grant Defendant's motion to dismiss as to Bruno's UTPCPL claim, and will dismiss with prejudice Count Two of Plaintiff's complaint.

An appropriate order will follow.

Date: September 26, 2024

Stephanie L. Haines
United States District Judge